Evangeline Skinner and Regina Community Nursing Center (a non-profit corp. of Penna.), Petitioners v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 4, 1978, before Judges WILKIN-SON, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*Frank M. Jackson,* for appellants.

*Betty F. Perry,* Assistant Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, April 3, 1979:

Evangeline Skinner (Skinner) is a 91 year old mentally competent resident of the Regina Community Nursing Center (Center). Until early 1977, she received medical assistance benefits from the Department of Public Welfare (DPW). One criterion for long term medical assistance eligibility is that recipients not own "nonresident" property valued at more than $1500.00. 55 Pa. Code §177.83(b)(2)(iv).[1] In January, 1977, Skinner received notice from the Philadelphia County Board of Assistance (Board) that ef-

---

[1] Nonresident real property is defined as

Property not used as a home by the client, his spouse, or his minor or incompetent adult children, or property that has been the home of the client or his spouse but has not been so used for six consecutive months and there appears little likelihood that either will return to it.

55 Pa. Code §179.82.

fective February 1, 1977, DPW would discontinue her benefits because she owned nonresident property valued at more than $1500.00. Skinner and the Center appealed that determination to DPW which affirmed the Board's decision.

This appeal from DPW's order raises two issues: whether the nonresident property regulation under which Skinner's benefits were terminated is in conflict with Section 4 of The Support Law (Law), Act of June 24, 1937, P.L. 2045, *as amended,* 62 P.S. §1974, and whether there is substantial evidence to support the finding that Skinner's property is worth more than $1500.00.

Section 4 of the Law prohibits the placing of liens against the property of individuals receiving medical assistance. 62 P.S. §1974(c). Skinner and the Center argue that by withdrawing Skinner's benefits because of her property ownership DPW is doing indirectly what it is prohibited from doing directly by way of Section 4 of the Law. We cannot agree.

"Although participation by the States in a Federal program to provide medical assistance for the 'medically needy' is optional, if the State is to remain eligible for Federal funding it must comply with Federal statutes and regulations." *Caddy v. Department of Public Welfare,* 14 Pa. Commonwealth Ct. 317, 319, 322 A.2d 140, 142 (1974). According to the Social Security Act, 42 U.S.C. §1396a(a)(17), a State plan for medical assistance must

> include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) *provide for taking into account only such income and resources as are . . . available to the applicant or recipient and . . . would not be disregarded . . . in determining his eligibility for*

*such aid, assistance, or benefits,* (C) provide for reasonable evaluation of any such income or resources, and (D) [with certain exceptions herein inapplicable] do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan. ... (Emphasis added.)

Thus, DPW is *required* by Federal law to take into account the resources available to Skinner. Since the benefits which are the center of this controversy are controlled by Federal law, it is DPW's duty to comply with Federal law or risk losing the benefits entirely.

Evidence produced at the hearing showed that Skinner owns a piece of nonresident real property located at 434 South 54th Street, Philadelphia, where she resided prior to her admission to the Center on April 21, 1975. At the time this action arose Skinner had not resided in her home for more than six consecutive months and it was doubtful that she ever would be physically capable of returning to her home. Her adult son resided in the home at the time of the DPW hearing. In this appeal, Appellants challenge the value of that property. They have not questioned that the property is otherwise "nonresident" under the DPW regulation. DPW employs two methods for determining market value of nonresident property:

The value of nonresident property is its market value minus encumbrances recorded against it. To determine market value, the county assessed value of the property should be divided by the percentage rate of county assessment. However, if the value obtained by using the formula obviously does not reflect the current selling price on the open market, the County Office will request of the Claim Settlement Area Office an estimate of the market value of the property.

55 Pa. Code §179.84. At the hearing before the DPW Hearing Examiner, an Income Maintenance Worker I testified that by using the assessment method of valuation, the property had a market value of $9,000.00. Following Skinner's and the Center's notice of appeal, the property was evaluated by the Claims Settlement Office and valued at $3,000.00.[2]

Appellants presented no evidence regarding the value of the Skinner property. They argue that the wide disparity in the Board's valuations somehow indicates that the property does not have a value in excess of $1500.00. We disagree. Despite the fact that DPW produced two differing market value figures for the property, both values exceeded $1500.00. In the absence of any countervailing evidence of a value less than $1500.00 the hearing examiner could (although he was not bound to) accept the Board's testimony in making his findings of fact. We find substantial evidence to support his finding that the value of the subject real estate exceeded $1500.00. Appellants' second argument was that Skinner's son, also a welfare recipient, resided in the home therefore making it unsaleable. It is undisputed that Skinner could deed the property to her son and become eligible to receive medical assistance under the DPW regulation. The fact that the son cannot be located or will not cooperate is irrelevant to a disposition of this case.

DPW regulations clearly state that one owning nonresident property valued in excess of $1500.00 is ineligible to receive medical assistance. The uncontradicted testimony in this case demonstrates that Skinner owns such property. Accordingly, DPW's decision affirming the Board's denial of medical assistance to Skinner is correct.

Order affirmed.

---

[2] There were no encumbrances recorded against the property.

474

## ORDER

AND Now, this 3rd day of April, 1979, the Order of the Department of Public Welfare dated March 29, 1977, affirming the action of the Philadelphia County Board of Assistance discontinuing nursing home care payments to Evangeline Skinner is affirmed.